UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

RANDALL LEON LOCKHART,

      Movant,

v.                                  Case No. 6:06-cv-00699
                                    Case No. 6:04-cr-00164

UNITED STATES OF AMERICA,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

On September 7, 2006, Movant, Randall Leon Lockhart ("Defendant"), filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (docket # 73).  By standing order, the presiding District Judge referred the motion to this United States Magistrate Judge for submission of proposed findings and recommendation for disposition.

## PROCEDURAL HISTORY

On August 25, 2004, an indictment was returned against Defendant, charging him with two counts of being a felon in possession of three firearms (Count One) and one firearm (Count Three), in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of possession of a sawed-off shotgun (Count Two), in violation of 26 U.S.C. §§ 5861(d) and 5871.  (Indictment, # 1.)

On April 25, 2005, Defendant entered a guilty plea to Count One, pursuant to a plea agreement.  The plea agreement, signed by Defendant on April 15, 2005, contains a stipulation of facts as

follows:

> (a) The Harrington and Richardson, single shot, 20 gauge shotgun referenced in Count One, paragraph 1(c), is a firearm described in 26 U.S.C. § 5845(a), that is, a firearm having an overall length of less than 26 inches, and having a barrel of less than 18 inches in length.

> (b) At the time Mr. Lockhart possessed the aforesaid firearm, he had been convicted of two offenses of felony jail break in violation of West Virginia Code Section 61-5-10.

> (c) Mr. Lockhart possessed at least three firearms.

> (d) Mr. Lockhart possessed the firearms in connection with another felony offense.

(# 50, at 2.)

On July 18, 2005, the presiding District Judge, the Hon. Joseph R. Goodwin, imposed the statutory maximum sentence of 120 months (Defendant's guideline range exceeded the statutory maximum, due to his lengthy criminal history), to be followed by a three year term of supervised release, and a $100 special assessment (# 59).  The Judgment was entered July 22, 2005 (# 60).  No direct appeal was taken.

### TIMELINESS

As noted above, Defendant's original § 2255 motion was filed on September 7, 2006, more than one year after his conviction became final.  His original motion explains that he was unable to file the motion within the one year period because he was transferred among correctional institutions frequently. (# 73, at 12-13.  His amended motion contains additional explanation and

2

invokes equitable tolling (# 80, at 2-10).

The United States acknowledges that Defendant was moved so frequently that the transfers should be considered as an impediment created by the government. The government responds that Defendant "has shown adequate cause to excuse his delay in filing, and therefore, does not object to his petition being deemed as timely." (# 89, at 3.)

Based on the foregoing, the undersigned proposes that the presiding District Judge **FIND** that equitable tolling applies to Defendant's unusual circumstances, and that his § 2255 motion, as amended, shall be considered to be timely filed and amended.

### ALLEGED FACTS OF THE CASE

According to the presentence report ("PSR"), Harlan Williams owed Defendant payment for an "eight-ball" (1/8th of an ounce, or approximately 3.5 grams) of methamphetamine. (PSR, ¶ 21, at 6.) When Williams did not pay the drug debt for a year, Defendant stole Williams' motorcycle. Id. Williams reported the theft of the motorcycle to the police and his insurance carrier. Id.

On July 25, 2002, Defendant rode the motorcycle to his former girlfriend's house; when her father arrived, Defendant ran away. Id., ¶ 24, at 7. When the police arrived, an officer found a leather jacket on the motorcycle, with a .22 caliber Lorcin pistol, 59 .22 caliber bullets, a crack pipe and cooking spoon, and a cell phone, in the jacket pockets. Id., ¶ 22. The .22 caliber Lorcin

3

is the firearm listed in Count Three of the indictment.

The next day, on July 26, 2002, police responded to a fire at Harlan Williams' house.  _Id._, ¶¶ 11, 20.  The caller to 911 reported that three people, traveling in a dark colored van, had set the fire and fled.  _Id._, ¶ 12, at 5.  When a trooper stopped a dark colored van in the vicinity, the front seat passenger fled, and the driver, Kristina Davis, and the rear seat passenger, Michael Zavetsky, were arrested.  _Id._, ¶ 14.  Davis and Zavetsky declined to identify the third person.  _Id._  Police found three weapons in the van, which are the three firearms listed in Count One of the indictment.  The Harrington and Richardson sawed-off 20 gauge shotgun was found between the front seats, and twenty rounds of 20 gauge shotgun ammunition were found on the front passenger floorboard.  _Id._, ¶ 15.  Mr. Williams suggested to police that his house was burned in retaliation for his reporting the theft of his motorcycle.  _Id._, ¶ 20, at 6.  The indictment contains a sentencing allegation that, as to Count One, "all firearms were possessed in connection with the felony offense of arson."

**GROUNDS FOR RELIEF**

The original motion (# 73) states three grounds for relief which are set forth below in regular type.  The amended motion (# 80) elaborates on these grounds and adds two more grounds, which are set forth below in _italics_:

GROUND ONE: Petitioner received ineffective assistance of counsel.

4

1. Counsel refused to supply petitioner with discovery.
2. Counsel performed no pre-trial investigation.
3. Counsel performed no consultation with petitioner.
4. Counsel coerced petitioner into taking guilty plea.
5. Counsel failed to prepare for the sentencing phase.
6. Counsel abandoned petitioner at sentencing.
7. Counsel refused to perfect petitioner's notice of appeal. *Counsel refused to file Petitioner's appeal.*

GROUND TWO: Court erred in accepting coerced/involuntary plea. Trial transcripts show that petitioner refused to admit guilt at plea hearing.

GROUND THREE: Petitioner is actually innocent of the crime in which he was convicted. There are no facts implicate this petitioner in the challenged conviction. *The evidence is insufficient to obtain a conviction in the instant cause.*

*GROUND FOUR: Petitioner's plea was involuntary.*

*GROUND FIVE: The court lacked jurisdiction to convict this petitioner.*

The government's response opposes these grounds, asserting that Defendant's sworn statements at his guilty plea hearing refute his claims, and contending that his remaining claims are defaulted by reason of his failure to appeal (# 89.) Exhibit A to the response is an affidavit submitted by Defendant's attorney, Assistant Federal Public Defender Michael L. Desautels, and related correspondence and documents.

Defendant filed a reply, in which he disputes the statements in Mr. Desautels' affidavit (# 93). He attempts to add an

5

additional ground for relief concerning credit for time served (#
93, at 24-26).    Defendant  provides  no  evidence  that  he  has
exhausted his administrative remedies at the Bureau of Prisons with
respect to his claim to credit for time served, as required.    If,
after exhausting those remedies without satisfaction, he wishes to
file a petition for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2241, he may do so in the United States District Court for the
Northern  District  of  West  Virginia,  the  district  where  he  is
incarcerated, naming the warden as the respondent.    The undersigned
proposes that the presiding District Judge **FIND** that Defendant's
ground for relief concerning credit for time served is not properly
brought as a § 2255 motion.    It is respectfully **RECOMMENDED** that
the  District  Judge  dismiss  without  prejudice  that  ground  for
relief.

### GROUND ONE: ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

The Supreme Court addressed the right to effective assistance
of counsel in Strickland v. Washington, 466 U.S. 668 (1984), in
which the Court adopted a two-pronged test.    The first prong is
competence; movant must show that the representation fell below an
objective standard of reasonableness.    Id., at 687-91.    There is a
strong presumption that the conduct of counsel was in the wide
range of what is considered reasonable professional assistance, and
a reviewing court must be highly deferential in scrutinizing the
performance of counsel.    Id., at 688-89.

6

In order to meet the first prong, movant

>must identify the acts or omissions of counsel that are
>alleged not to have been the result of reasonable
>professional judgment. The court must then determine
>whether, in light of all the circumstances, the
>identified acts or omissions were outside the wide range
>of professionally competent assistance. . . [C]ounsel is
>strongly presumed to have rendered adequate assistance
>and made all significant decisions in the exercise of
>reasonable professional judgment.

Id., at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694. The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice. Id., at 697. In the context of a case in which a defendant pled guilty, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Fields v. Attorney General, 956 F.2d 1290 (4th Cir. 1992).

### Pretrial Discovery and Guilty Plea

Listed below are Defendant's allegations as to Mr. Desautels' deficiencies in his representations in the pretrial and guilty plea stages:

7

1. Counsel refused to supply petitioner with discovery.
2. Counsel performed no pre-trial investigation.
3. Counsel performed no consultation with petitioner.
4. Counsel coerced petitioner into taking guilty plea.

(Motion, # 73).  The Amended Motion substantially elaborates on these allegations (# 80).  Notably absent from the claims is an assertion that but for errors by Mr. Desautels, Defendant would not have pled guilty, as required by <u>Hill v. Lockhart</u>, <u>supra</u>.

<u>Discovery Materials</u>

Defendant complains that Mr. Desautels refused to leave discovery materials with Defendant at the jail.  (# 80, at 11.)  Mr. Desautels advised Defendant that the Federal Public Defender's policy prohibited leaving grand jury materials at the jail; Mr. Desautels' affidavit states that he "spent as much time with [Defendant] as he wanted, in order to allow him to read the grand jury testimony and to discuss it with me."  (# 89, Ex. A, ¶ 6.)

<u>Pretrial Investigation</u>

Defendant contends that he informed Mr. Desautels of an alibi witness, and that Mr. Desautels never interviewed this person, Sandy Weekley.  (# 80, at 11.)  Mr. Desautels does not address this allegation in his affidavit.  Defendant did not submit any affidavit from Ms. Weekley.  The court notes that the prosecutor advised Defendant in open court that Kristina Davis, the driver of the van, was prepared to testify that Defendant was involved in "all of the events of that evening" (i.e., the arson), and that Defendant "brought the firearms to the van."  (Tr. Plea Hr'g, # 83,

8

at 19-20.)

It is apparent that Mr. Desautels carefully reviewed the discovery materials, and made repeated efforts to resolve the Wood County, West Virginia charges faced by Defendant with the federal charges so as to avoid imposition of consecutive prison terms. The motions to continue pretrial motions dates and trial dates recite these efforts (## 18, 22, 25, 35).

Mr. Desautels filed a successful motion to suppress an identification of Defendant by the trooper who stopped the van. His motion to suppress the .22 cal. Lorcin (supported by a memorandum, # 46) was denied as moot when Count Three was dismissed pursuant to the plea agreement (# 59; Tr. Disp. Hr'g, # 84, at 20).

<u>Consultation</u>

Defendant's complaints that Mr. Desautels did not visit with him sufficiently are not supported by the record. Defendant concedes that he had several face-to-face meetings with Mr. Desautels in various jails, plus several telephone discussions. The court has counted seven jail visits that are admitted by Defendant or documented (September 8 and 16, and December 3, 2004; January 5, February 25, March 17, and May 4, 2005). Records of jail visitors at the Carter County, Kentucky facility are not maintained; thus it is possible that Mr. Desautels visited Defendant in person on more occasions. In addition, Defendant and Mr. Desautels had opportunities to meet and discuss the case every

9

time that Defendant had a court appearance.  The records of the
Federal Public Defender reflect that Mr. Desautels met with
Defendant at a jail more than fifteen times.  (# 89, Ex. B.)

Alleged Coerced Guilty Plea

Defendant signed the plea agreement on April 15, 2005, ten
days before he entered his guilty plea before Judge Goodwin.  Thus
it cannot be said that Defendant was rushed or pressured into
signing; he had ample opportunity to reflect upon his decision.

The plea agreement contains stipulations of the most important
facts which affected Defendant's sentence (# 50).  If Defendant had
gone to trial on all charges, and the jury had found the facts
stipulated in the agreement, Defendant's sentence would have been
significantly longer than the statutory maximum of ten years to
which he pled guilty.

Defendant testified under oath at his guilty plea hearing that
he was "fully satisfied with the legal advice given" by Mr.
Desautels, he understood the plea agreement, he was "completely
satisfied with the legal advice" given by Mr. Desautels, he was
"acting freely and voluntarily," pleading guilty was his own idea,
and he had no second thoughts.  (Tr. Plea Hr'g, # 83, at 4, 9, 27.)

Based on the foregoing, the undersigned proposes that the
presiding District Judge **FIND** that Defendant was not denied
effective assistance of counsel with respect to pretrial
investigations and proceedings, and that he was not denied

effective assistance of counsel with respect to his decision to sign a plea agreement and to enter a guilty plea.

### Sentencing

Defendant contends that his attorney was unprepared for his sentencing hearing, and abandoned him. (# 73, at 4.) He complains that Mr. Desautels failed to call character witnesses (Defendant's mother, brother, sister-in-law, business partner, and various private contractors) (# 80-1, at 14-15; # 80-2, at 9.) He claims that his attorney "refused" to obtain a psychiatric report of Defendant concerning his drug addiction. (# 80-2, at 10.) He asserts that there are errors in his presentence report, which should have been corrected. (# 80-1, at 17.) He identifies the alleged errors as (a) inclusion of a statement by Richard Lawson which was used as relevant conduct, and (b) prior convictions (not identified) which should not have been in the criminal history computation. <u>Id.</u>

These contentions by Defendant should be considered against the backdrop of Defendant's significant criminal record (three prior felonies and numerous other convictions), resulting in a Criminal History Category of V, and the stipulation of facts contained in the plea agreement, which set his Total Offense Level, with acceptance of responsibility, at 29. Defendant was thereby exposed to an advisory guideline range of 140 to 175 months, which is a range 20 to 55 months longer than the statutory maximum for

11

his offense of conviction.  (Tr. Disp. Hr'g, # 84, at 4-5.)

Statements attributed to Richard Lawson are found at paragraphs 19 and 21 of the presentence report.  Mr. Lawson's information alleged that Defendant had possessed other firearms, and provided the explanation as to why Defendant stole Harlan Williams' motorcycle.  Neither assertion made any difference to the calculation of Defendant's offense level.

Shortly before the sentencing hearing, Mr. Desautels asked the probation officer to re-calculate Defendant's criminal history category, and this resulted in a one-point reduction, from 13 to 12.  (Tr. Disp. Hr'g, # 84, at 13.)  This reduction did not affect Defendant's Criminal History Category of V.

Mr. Desautels obtained the services of Dr. Mark Casdorph, a psychiatrist, who evaluated Defendant.  (# 89, Ex. A, ¶ 10.)  Dr. Casdorph did not testify at the sentencing, and his report was not submitted to the court.

Mr. Desautels attended the presentence interview of Defendant, and discussed the report extensively with him.  (# 89, Ex. A, ¶ 14.)  Defendant does not dispute this.

In preparation for sentencing, Mr. Desautels filed a sentencing memorandum, which argued that (a) the criminal history over-represented the seriousness of Defendant's conduct, (b) Kristina Davis and Shawn Zavetsky were not prosecuted in federal court and received disparate treatment, (c) Defendant was being

prosecuted in State court in addition to this case, (d) Defendant has a longstanding addiction to alcohol and drugs and was under the influence at the time of the offense, and (e) Defendant had a terrible childhood and was abused.   (# 58.)   Mr. Desautels indicated his intention to call Defendant's business partner at the hearing.  Id., at 5.

At final disposition, Mr. Desautels presented argument in support of his memorandum, introduced Defendant's family members, and urged imposition of a sentence less than 120 months. (# 84, at 7-17.)

Based on the foregoing, the undersigned proposes that the presiding District Judge **FIND** that Defendant was not denied effective assistance of counsel in connection with his sentencing hearing, and that Mr. Desautels' representation of Defendant was well within the range of reasonable professional assistance.

### Failure to Appeal

Near the conclusion of the sentencing hearing on July 18, 2005, Judge Goodwin advised Defendant of his right to appeal, and of the deadline for filing a notice of appeal, which is within ten days of the entry of the order of sentence and conviction.  (Tr. Disp. Hr'g, # 84, at 19-20.)  Judge Goodwin specifically noted that if the notice of appeal were not filed, the right to appeal would expire.  Id., at 20.  Defendant voiced his understanding.  Id.

Defendant claims that when he was sentenced, he unequivocally

advised Mr. Desautels of his desire to appeal. (# 80-1, at 17; # 80-2, at 11.)  He alleges that Mr. Desautels replied that there were no appealable issues.  Id.  Defendant's submissions, except for the Response at docket # 93, bear his signature beneath a statement that indicates variously that the facts contained therein are subject to the penalties of perjury, or that he affirms they are true to the best of his knowledge.

Pursuant to an Order entered December 11, 2007, the United States supplemented the record with documents from the Federal Public Defender's file (## 102, 103.)

Mr. Desautels prepared a memorandum to the file after the disposition hearing, which reads as follows: "Mr. Lockhart was sentenced today to 120 months (10 years)(J. Goodwin).  Immediately after the sentencing, Mr. Lockhart told me that he does not wish to file an appeal, or pursue an appeal of either his conviction or sentence." (# 103-2, at 9.)

The Judgment was entered on July 22, 2005, a Friday.  On Tuesday, July 26, 2005, Mr. Desautels wrote a letter to Defendant which reads as follows:

> I am enclosing a copy of the Judgment entered in your case.  This Judgment is consistent with Judge Goodwin's ruling at your July 18, 2005, sentencing hearing.  As we previously discussed, we will not be appealing your sentence.
>
> Should you have any questions, please do not hesitate to call.  I certainly hope things go well for you in the future.

14

(# 103-2, at 8.)

The notice of appeal was due no later than August 5, 2005. According to Defendant, during July and the early part of August, 2005, he was housed at Carter County Detention Center in Grayson, Kentucky.  (# 80-1, at 4.)  On August 8, 2005, he was moved to North Central Regional Jail.  <u>Id.</u>  The Judgment was mailed to him at Carter County in plenty of time for him to receive it before he was moved.  The docket sheet has no contemporaneous entries reflecting that mail was returned as undeliverable to Defendant.

Defendant complained about Mr. Desautels' representation of him in his undated responses to a client questionnaire sent to him by the Office of the Federal Public Defender.  In the questionnaire, Defendant stated: "I wanted to appeal (for a lighter sentence) and Mr. Desautels refused." (# 80-3, Ex. A.)  At the end of the questionnaire, Defendant wrote, in pertinent part, "I asked my lawyer Michael Desautels to appeal for a lighter sentence and he flat refused to."  <u>Id.</u>

In a letter dated November 4, 2005, in response to Defendant's negative comments on the questionnaire, Mary Lou Newberger, the Federal Public Defender, wrote to Defendant as follows:

> I also considered the issue of whether Mr. Desautels failed to file an appeal after you requested that he do so.  On the date of your sentencing, Mr. Desautels wrote a memo to your file indicating that you told him you did not want an appeal.  Further, On July 26, 2005, Mr. Desautels sent you a copy of the Judgment and Commitment Order entered in your case.  That letter includes the follows, "As we previously discussed, we will not be

15

appealing your sentence . . . Should you have any
questions, please do not hesitate to call." This office
did not receive any letters or phone calls from you
indicating that you wished to appeal your sentence.

(# 80-3, Ex. B.)

On November 8, 2005, Defendant replied to Ms. Newberger with respect to the appeal as follows: "I did ask Mr. Desautels to appeal my sentence, but he denied 3 times, stating he seen no reason to appeal." <u>Id.</u>, Ex. C-1.

Mr. Desautels' affidavit addresses the filing of a notice of appeal as follows:

> 15.  I spoke with Mr. Lockhart immediately after the
> sentencing hearing about an appeal.  He told me that he
> did not wish to pursue an appeal.  I told him that I
> would, therefore, not be filing a notice of appeal.  I
> prepared a memorandum soon thereafter as a record of that
> decision by petitioner.  As he mentioned in his petition,
> I sent him a letter soon after that which confirmed that
> we would not be filing a notice of appeal, consistent
> with his decision.  I believe that in that letter I also
> forwarded the judgment to Mr. Lockhart.

(# 89, Ex. A, ¶ 15.)

Based on the documents from the Federal Public Defender's file which were submitted by the United States on December 13, 2007 (# 103), and which corroborate Mr. Desautels' affidavit, the undersigned has concluded that an evidentiary hearing is not warranted, and the strong weight of the evidence is that during the ten days after his Judgment was entered, Defendant did not request his attorney to file a direct appeal.

In <u>Roe v. Fores-Ortega</u>, 528 U.S. 470, 480 (2000), the Supreme

16

Court held that

> counsel has a constitutionally imposed duty to consult
> with the defendant about an appeal when there is reason
> to think either (1) that a rational defendant would want
> to appeal (for example, because there are nonfrivolous
> grounds for appeal), or (2) that this particular
> defendant reasonably demonstrated to counsel that he was
> interested in appeal. [Citation omitted.] Although not
> determinative, a highly relevant factor in this inquiry
> will be whether the conviction follows a trial or a
> guilty plea, both because a guilty plea reduces the scope
> of potentially appealable issues and because such a plea
> may indicate that the defendant seeks an end to judicial
> proceedings.  Even in cases when the defendant pleads
> guilty, the court must consider such factors as whether
> the defendant received the sentence bargained for as part
> of the plea and whether the plea expressly reserved or
> waived some or all appeal rights.

There is no reason to think that a rational defendant would have
wanted to file an appeal under these circumstances, because there
is no nonfrivolous ground.  This particular defendant did not
reasonably demonstrate to Mr. Desautels in a timely manner that he
wanted an appeal filed.  The case was concluded by Defendant's plea
of guilty to an offense carrying a statutory maximum penalty which
was less than the guideline range prescribed for Defendant's
conduct, in light of his criminal history.  Defendant received the
sentence for which he bargained.

    The undersigned proposes that the presiding District Judge
**FIND** that Defendant was not denied effective assistance of counsel
in connection with his right to a direct appeal, and that Defendant
has failed to show that he timely requested that an appeal be
filed.

**GROUNDS TWO AND FOUR - VOLUNTARINESS OF THE PLEA**

The undersigned has quoted above, at page 2, the text of the stipulated facts in the plea agreement.   At the guilty plea hearing, ten days after the plea agreement was signed by Defendant, he was reluctant to admit the factual basis for his plea.   After advising Defendant of the essential elements of the offense, Judge Goodwin continued the colloquy with him:

> THE COURT: Considering those definitions, do you consider yourself guilty of Count One as read to you, that is, violating 18, United States Code, Section 922(g)(1) and 924(a)(2)?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Tell me what you did that makes you believe you're guilty.  I've heard the stipulation in the plea agreement.  Just tell me in your own words.
>
> THE DEFENDANT: According to the evidence, I had a New England single-shot shotgun; a Marlin .22 caliber semi-automatic rifle; and a Harrington & Richardson 20 gauge shotgun.
>
> THE COURT: Did you have those?
>
> THE DEFENDANT: According to the evidence.
>
> THE COURT: Well, no, I'm asking you.  Did you have them?
>
> THE DEFENDANT: I – Your Honor, I was so messed up on drugs and alcohol during this period of time that I, I can honestly say that I do not recall having those guns. But with the evidence that I've seen, I can't hardly say that I didn't have them.
>
> THE COURT: But you have no recollection of having them?
>
> THE DEFENDANT: I have no recollection.

18

THE COURT: I mean, how long had you had them?

THE DEFENDANT: Obviously, just that night.

* * *

THE COURT: Well, he says – I mean, right now you've got a stipulation there that says he possessed the guns. He concedes you'll be able to prove it, but I'm supposed to get a knowing and voluntary plea.  And one of the elements of the plea is that I have to satisfy myself that he knowingly violated Subsection (g) of 922.  He says he didn't have a clue.  What do I do?  I guess I give him a trial.

MR. HANKS: That's fine, Your Honor.  We're ready to go.

THE COURT: Mr. Desautels.

MR. DESAUTELS: Can we just have five minutes, Your Honor?

(Pause)

THE COURT: Let me just ask you, Mr. Hanks, what's your evidence about how long those guns were there?  Do you have anything about that?

MR. HANKS: Your Honor, we have – one of the co-defendants has pled guilty.  She spent a considerable amount of time with the defendant.  She was, in fact, his girlfriend at the time.  And she can tell us all kinds of things about different occasions when he possessed the guns, how long he had them, that he sawed off a shotgun at her parents' house, that he was the one driving the, or he was the one who brought the weapons there that night when they set about their planned scheme.

I believe that the Government's evidence would make the defendant's assertion that he didn't know what he was doing to just not be credible.

THE COURT: All right.  He's got an obligation – I think under that plea agreement you've got to tell the truth.  Right?

MR. HANKS: I believe so, Your Honor.

19

THE COURT: All right.  I'll give him a few minutes to talk about this.  Court will stand in brief recess.

[Recess taken from 9:50 a.m. until 10:15 a.m.]

THE COURT: * * * All right, Mr. Desautels.

MR. DESAUTELS: Your Honor, Mr. Lockhart is prepared to say as to the knowing element that he was on drugs and alcohol on July 26th, 2002, but that he knows that he did - he knew then that he did possess the guns in the van along with two other persons.

THE COURT: Is that right, Mr. Lockhart?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.  Would you - that's a little bit different than what you told me a minute ago.  Are you comfortable with that?  Is that the truth?  You're under oath.

THE DEFENDANT: Yes.

THE COURT: All right.  Did these acts occur on or about the 26th day of July, 2002, at or near Davisville, Wood County, within the Southern District?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And have you previously been convicted of crimes punishable by imprisonment as admitted in your stipulation?

THE DEFENDANT: Yes.

THE COURT: All right.  I'll let you sit down and ask for a proffer from the Government.

MR. HANKS: Your Honor, the - because there are some pending state charges, the defendant is not in a position to admit the felony of which this is connected.  So, I will proffer it but - do you understand the -

THE COURT: All right.

MR. HANKS: Your Honor, on the, on the evening of July 26th, 2002, there was a house fire.  State Police

20

responded to it.  A van was observed leaving the scene.
The State Police stopped the van.  The van had been
previously described by a witness as being involved with
the house fire.

When the police stopped the van, the defendant was
a passenger.  He got out.  The police officer spoke with
him briefly, but the defendant fled and was apprehended
much later.

In the, in the van were three firearms including, or
the three firearms set forth in Paragraph 1 of the
indictment, along with the materials involved with the
house fire.

The defendant has three previous felony convictions
as are set forth.  One of the co-defendants involved with
the house fire incident will testify pursuant to her
state plea agreement that the defendant was involved in
all of the events of that evening, brought the firearms
to the van.  And she, as I said previously, dated him for
a period of time, saw him in possession of the, of at
least one of these firearms on other occasions.

The Government would be able to prove by use of an
interstate nexus expert that all the firearms were
manufactured somewhere other than the State of West
Virginia, and that once they were recovered here they
traveled in and affected interstate commerce.

THE COURT: Mr. Lockhart, if you and your lawyer will
stand again.   Mr. Lockhart, you've heard what the
Government's lawyer said.  Is what he said about the guns
and your prior convictions true?

THE DEFENDANT: Yes, Your Honor.

(Tr. Plea Hr'g, # 83, at 14-20.)

After thoroughly advising Defendant of his constitutional

rights, and hearing Defendant's assurances that he understood his

rights, Judge Goodwin found that his guilty plea was voluntary.

Id., at 21-27.  Defendant signed the guilty plea form.  Id., at 28.

Based on the ten day lapse between signing the plea agreement

with its stipulation of facts and entering his guilty plea, Defendant's repeated admissions of guilt at the plea hearing, his concurrence in the government's proffer of the factual basis for the plea, and his signing of the guilty plea form, the undersigned proposes that the presiding District Judge **FIND** that Defendant's guilty plea was voluntary and that his second and fourth grounds for relief are without merit.

### GROUND THREE - SUFFICIENCY OF THE EVIDENCE

Defendant claims that there is insufficient evidence to sustain his conviction because the firearms lacked fingerprints, registration, or other indicia of ownership by Defendant, and because the State Trooper's identification of Defendant was suppressed. (# 80-2, at 14.)

Consistent with the government's proffer of its evidence, Defendant's admissions, and the finding of a legal and factual basis for Defendant's guilty plea, the undersigned proposes that the presiding District Judge **FIND** that the evidence of Defendant's guilt was sufficient.

### GROUND FIVE - JURISDICTION

Defendant contends that this court lacked jurisdiction to convict him because the writ of habeas corpus ad prosequendum, issued to obtain his presence before this court, erroneously referred to him as an "unsentenced" State prisoner (# 80-2, at 18.) In fact, Defendant was then serving a one-to-ten year sentence

imposed upon his conviction for felony uttering in the Circuit Court of Taylor County, West Virginia. (Order entered April 24, 2006, # 71, at 1; # 71-2, Ex. C, at 12-15.) It is of no consequence to this court's jurisdiction whether Defendant was a sentenced or unsentenced State prisoner when he was brought to Federal court on a writ of habeas corpus ad prosequendum. Defendant provides no citation of authority in support of his argument, and the court is unaware of any. In fact, the claim is frivolous.

The undersigned proposes that the presiding District Judge **FIND** that Defendant's fifth ground for relief has no merit.

**RECOMMENDATION**

For the foregoing reasons, it is respectfully **RECOMMENDED** that the District Court deny Movant's Motion filed pursuant to 28 U.S.C. § 2255, and dismiss this matter from the docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed

Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Movant, Randall Leon Lockhart, and to transmit it to counsel of record.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Movant, Randall Leon Lockhart, and to transmit it to counsel of record.


  December 17, 2007
        Date

                              Mary E. Stanley
                         Mary E. Stanley
                         United States Magistrate Judge